324 So.2d 389 (1975)
STATE of Louisiana
v.
Osby BRYANT, Jr., et al.
No. 56854.
Supreme Court of Louisiana.
December 8, 1975.
Rehearing Denied January 16, 1976.
Billy R. Pesnell, John M. Madison, Jr., Sidney B. Galloway, Samuel P. Love, Jr., Shreveport, for defendants-relators.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., for plaintiff-respondent.
DIXON, Justice.
We granted writs in this case because it involved the same subject matter as that in several applications from another district in which conflicting rulings had been made.
Defendants, Osby Bryant, Jr., Billy George Payton, Willie Marie Washington *390 and Leona Sadler, were charged with murder in an affidavit filed by the district attorney. The district judge appointed a lawyer to represent each defendant. Following the indictment of the defendants the lawyers appointed to represent them filed, on their own behalf and on behalf of the defendants, a motion to stay the prosecution and revoke the appointments, or, in the alternative, to order the State of Louisiana to pay the lawyers reasonable compensation for services to be rendered.
After a hearing on the motion it was denied, the court finding no merit in the principal demands and finding the alternative demands for compensation premature.
The motion argues that the Louisiana indigent defender board statute (R.S. 15:141, whose source was Act 366 of 1966) does not comply with Art. I, § 13 of the La. Const.; that defendants are deprived of their rights to effective assistance of counsel as guaranteed by Art. I, §§ 2 and 13 of the La. Const. of 1974 and the Fifth and Fourteenth Amendments of the Constitution of the United States; and that the lawyers are deprived of their rights to reasonable compensation under Art. I, § 13 of the La. Const. of 1974, which constitutes a taking of their property, involuntary servitude and a deprivation of equal protection in violation of the United States and Louisiana Constitutions.
Relator Madison argued that, although he has volunteered to serve on the panel of attorneys on the indigent defender board, he believes it is unable to pay him reasonable compensation.

I
The last argument can be disposed of first. The hearing on the motion developed the fact that the Caddo Parish Police Jury had never refused to pay any bill approved by the indigent defender board and the district court. There is no evidence which indicates that Mr. Madison will not be paid.

II
Further, there was no showing on the hearing of any possibility that these defendants will not be effectively represented by counsel skilled in the profession.

III Next, we find it unnecessary to treat relators' contention that uncompensated lawyers are deprived of property without due process and equal protection and are forced into involuntary servitude because, in brief, relators admit that the traditional and majority view does not support them (see State v. Clifton, 247 La. 495, 172 So.2d 657 (1965); Annotation, 21 A.L.R.3d 819. Relators contend, however, that changed conditions increase the confiscatory nature of the appointments.
First, we do not find that any of these relators will be uncompensated. One is on the volunteer panel, and there is no rule or provision obstructing his payment. The other three contend they will not be paid because, as developed on the hearing, the First Judicial District Court as a rule and practice does not certify for payment the services of lawyers not on the list of volunteers. At one time, when appointments were not so numerous, there might have been a valid reason for some such provision. However, when the need for appointed lawyers far exceeds the number of volunteers on the panel, the rule should be revised. The court has the inherent power to make appointments of lawyers not on the volunteer panel, and this power is specifically recognized in R.S. 15:141(G) and (I). R.S. 15:141 does not limit payment to appointed lawyers who are on the volunteer panel. If the district court should deny compensation to lawyers because they are not on the volunteer panel, this court will be open to receive and consider a proper application for relief. (Here, the district court has simply denied relators' claim because it is premature, no *391 services having yet been rendered in the case).
As for changing conditions, this court knows of the increase in crime, the increasing difficulty of criminal practice, the necessity of appointing lawyers in misdemeanor cases as well as in felony cases, and can imagine the burden on some lawyers if the load is inequitably distributed. We also have firsthand knowledge of the tremendous increase in the number of lawyers in Louisiana and probably in Caddo Parish in the last few years. We are aware, in addition, that we seldom encounter, as appointed counsel, lawyers who are employed full-time by business enterprises or governmental agencies, or whose practice seldom carries them to the criminal courts. Relators, however, complain only that it is the bar, generally, which bears an inordinate proportion of society's obligation; they do not complain that the individual lawyers before us are the victims of discrimination in appointment. Consequently, even if relators were not to be compensated, the record before us would not support a finding that changed conditions require the adoption of the proposition that forcing uncompensated lawyers to serve as counsel for indigents amounts to deprivation of property without due process, nor involuntary servitude.

IV
Relators' principal argument is that existing legislation does not meet the constitutional requirements of Art. I, § 13 of the La. Const. for 1974:
"When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel. In a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him. At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment. The legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents."
The core of the argument is that the legislation for appointing and paying lawyers for indigents is not uniform.
At the outset, we note that, in the absence of any legislation, and regardless of any provision which might be in the Louisiana Constitution, the United States Constitution and decisions of the United States Supreme Court (Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) and Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972)), would require the appointment of counsel for indigents accused of crime. We do not consider as seriously made the suggestion that we stay the prosecution until further legislative action.
In demonstrating the lack of uniformity of existing legislation, relators point out R.S. 15:141, 142, 143, 145 and 868.
Only R.S. 15:145 was enacted subsequent to the effective date of the Constitution of 1974. R.S. 15:141 was last amended in 1972. R.S. 15:142 was added in 1972 and amended in 1974. R.S. 15:143 was added in 1974. R.S. 15:868 was 1956 legislation.
R.S. 15:142 and 145 provide for public defenders, in lieu of the indigent defendant boards of R.S. 15:141, for the Seventh, Eighteenth, Twenty-second, Eleventh and Thirteenth Judicial Districts. Except for the Thirteenth, these are multi-parish districts. R.S. 15:868 applies only to the appointment of attorneys to defendant inmates *392 of the Louisiana State Penitentiary who are charged with crime in West Feliciana Parish, where the penitentiary is locatedobviously a provision to satisfy a need peculiar to the area.
For all except five of the thirty-four judicial districts, therefore, R.S. 15:141 is applicable. The provisions of that statute are set out in the appendix to this opinion. Since relators were appointed and will be paid under the provisions of section 141, they are entitled to no relief unless 15:141 is constitutionally deficient. To find section 141 unconstitutional, we must find, not that the legislature has not fulfilled the expectations of the Constitutional Convention, but that it conflicts with the Constitution.
"(A) Retention. Laws in force on the effective date of this constitution, which were constitutional when enacted and are not in conflict with this constitution, shall remain in effect until altered or repealed or until they expire by their own limitation.
"(B) Expiration of Conflicting Law. Laws which are in conflict with this constitution shall cease upon its effective date." (Art. 14, § 18, La.Const. 1974).
The only conflict argued is a lack of "uniformity."
R.S. 15:141 by its terms applies to the whole State, including the Parish of Orleans. Every judicial district is required to establish an indigent defender board, under the supervision of the district court (or the criminal district court in Orleans Parish). The appointment of counsel is treated, provision for the funding and operation of an indigent defender fund is made, and payment from the fund is directed for necessary expenses in the preparation and trial of indigent defendants, including reasonable compensation to counsel.
Section I of R.S. 15:141 permits any judicial district to substitute for the indigent defender board a legal aid bureau or association, if it substantially complies with the act and is satisfactory to the district court.
The problem of "uniformity" was noted and discussed by Professor Lee Hargrave in 35 La.L.Rev. 1, at page 47:
"The final sentence, mandating the legislature to `provide for a uniform system for securing and compensating qualified counsel for indigents,' was added by floor amendment. The committee proposal concentrated on establishing judicially enforceable rights and did not generally concern itself with mandates to the legislature which do not lend themselves to enforcement through judicial proceedings. However, the convention, in an effort to encourage more state efforts in this regard, adopted the mandate by an overwhelming 99-11 vote. In any event, though no enforceable device exists to require the legislature to adopt a system for securing and compensating counsel, the third sentence of the section is nevertheless enforceable by the courts so that no valid conviction can be obtained unless the right to counsel has been granted as required.
"The terms of the mandate may not be clear in the reference to a `uniform system.' The natural meaning of the word would seem to require one standard system for the whole state. However, the author of the amendment, Delegate Thomas Velazquez, agreed with Delegate Walter Lanier's appraisal of the provision that, `in other words, in Lafourche Parish if we wanted to have the indigent defense system we could have that, and in New Orleans if they wanted the public defender system they could have that providing there was uniform legislation establishing both systems.' At the same time, other delegates questioned this construction and expressed the view that *393 `uniform' means identical throughout the state. Another delegate saw the mandate as related to a public defender system. Still another view reflects the historical development in Louisiana which considers legislation as uniform if it treats all cities within certain population classes equally. This last construction of the uniformity requirement would correspond with Article VI, § 3, which allows the legislature to `classify parishes or municipalities according to population or on any other reasonable basis related to the purpose of the classification' and to limit legislation to any such class or classes."
The author of the amendment to Art. I, § 13 containing the words "uniform system" was not a lawyer. We have read the debate at the Constitutional Convention when the amendment was adopted (State of Louisiana Constitutional Convention of 1973 Verbatim Transcripts Sept. 7, 1973 at 39), and are not convinced that the delegates who spoke on the amendment intended that the "system" be "uniform" except in furnishing "qualified counsel for indigents." Such an interpretation, which at first seems to disregard the clear meaning of words, was not an unnatural concept to delegates whose task often required them to balance the needs for uniformity against the need for workability in a State with political subdivisions of widely varying population, geography, customs and problems. See, for example, the definition of "general law" in Art. 6, § 44 of the La. Const. of 1974, defined in part as being "uniformly applicable to all persons." It was the application of the amendment to all indigent defendants which was of primary concern to most of those who debated the amendment at the Constitutional Convention.
We could not, even in the absence of a record of the Convention debates, hold that R.S. 15:141 so lacked uniformity that it violated the constitutional requirement. Nor could we say that the lack of uniformity was so clear to the legislature that it capriciously abdicated its responsibility under the constitutional mandate. Short of such a finding, or a finding of the existence of such exigent emergent conditions that extraordinary measures were required by this court, we could not grant to relators the relief sought.
For these reasons, the judgment of the district court is affirmed.

APPENDIX
R.S. 15:141
§ 141. Indigent defender boards
A. Each judicial district (including the parish of Orleans) shall establish an indigent defendant board, which shall have the duty of providing adequate legal representation of indigent persons who are charged with commission of felonies or of state misdemeanors punishable by imprisonment or who are alleged to be delinquent juveniles.
Amended by Acts 1972, No. 736, § 1.
B. Each indigent defendant board shall be composed of no less than three and no more than five members, who shall be attorneys licensed to practice in this state and qualified voters in the judicial district, appointed by the district court (in Orleans parish, the criminal district court) for such terms as the court may fix, not to exceed three years each. The members of the indigent defender board shall serve without compensation.
C. The indigent defender board shall establish and maintain a panel of volunteer attorneys licensed to practice in this state, from among whom the board shall furnish counsel to defend indigent persons who are entitled under this section to appointed counsel. When the accused is charged with commission of a capital offense, the attorney furnished by the board shall have been admitted to the bar for at least five years. An attorney with less experience *394 may be assigned as assistant counsel. Amended by Acts 1972, No. 736, § 1.
D. The district court (in Orleans parish, the criminal district court) shall exercise general supervision over the indigent defender board and shall upon consultation and advice of the board, adopt reasonable rules and regulations, relating to the duties of the board, including:
(1) The selection of counsel to serve on the defender panel and to serve in individual cases.
(2) The determination of reasonable compensation to counsel when funds are available.
(3) The determination of the indigency of the accused.
E. The attorney who undertakes the representation of an accused through the indigent defender board shall counsel and defend the accused at every stage of the proceedings thereafter and shall prosecute any appeals or other remedies before or after conviction which he considers to be in the interest of justice.
F. Whenever an accused charged with commission of an offense other than a capital offense shall have declared under oath that he desires counsel but is financially unable to procure counsel, the court shall refer the accused to the indigent defender board and the board shall provide for representation of the accused by counsel in accordance with the provisions of this section. The board may traverse the declaration of the accused by motion and hearing, and if the court finds the declaration not to be true, the board shall be relieved of further responsibility to provide counsel. If an accused without counsel is charged with a capital offense or if the question of his mental capacity to proceed is raised the court shall refer the accused to the board, and the board shall provide representation, regardless of the means of the accused.
Amended by Acts 1972, No. 736 § 1.
G. Counsel assigned by the indigent defender board, after a referral by the court, shall be considered as having been assigned by the court. If the board fails to assign counsel within seven days after referral of the case by the court, the court shall appoint qualified counsel to represent the accused. In any case, upon application of the accused or upon its own motion, the court may, in its discretion, appoint an attorney to represent the accused in substitution of the attorney assigned by the board under its regulations.
H. In all criminal cases in any court of the state of Louisiana, under any offense proscribed by any state statute contained in Title 14 of the Louisiana Revised Statutes of 1950 there shall be taxed as costs against every defendant who is convicted after trial or after a plea of guilty or who forfeits his bond, the sum of three dollars (in Orleans Parish, the sum of ten dollars), in addition to all other fines, costs of forfeitures lawfully imposed. The same additional costs of three dollars may be taxed against every defendant who is convicted after trial or after a plea of guilty or who forfeits his bond in connection with any other criminal offense, provided, however, in Orleans Parish the additional costs of ten dollars may be taxed against every defendant who is convicted after trial or after a plea of guilty or who forfeits his bond in connection with any other criminal offense, except a traffic violation where the additional costs shall be three dollars. The proceeds from these costs shall be retained by the parish treasurer (in Orleans Parish, the department of finance for the city of New Orleans) in a special fund to defray the expenses of the indigent defender board (in Orleans Parish, seven dollars of the ten dollars shall be retained by the auditor of the criminal district court for the indigent transcript fund *395 and be dedicated specifically to the payment of all transcripts prepared for indigent defendants, including transcripts of trials, motions, hearings on writs, bills of exceptions, and all court proceedings). Payment shall be made from the fund by the parish treasurer, upon order of the court, for necessary expenses incurred in preparation and trial of cases, including cost of transcription, and for reasonable compensation to counsel for indigent defendants. The parish governing authority may, at the end of the fiscal year, transfer any surplus in the indigent defender fund and the indigent transcript fund into the parish general fund, and may meet any deficit in the indigent defender fund and the indigent transcript fund by payment from the parish general fund.
Amended by Acts 1967, No. 126, § 1; Acts 1968, No. 448, § 1; Acts 1972, No. 736, § 1; Acts 1973, No. 152, § 1.
I. In each judicial district of the state (including the parish of Orleans) wherein the functions of an indigent defender board, as herein defined, are being performed by a legal aid bureau or legal aid association in a manner substantially complying with the provisions of this Section and satisfactory to the district court (In Orleans parish, the criminal district court) such court may by rule (adopted en banc in multiple-judge courts) designate such legal aid bureau or legal aid association as the indigent defender board of such district (including the parish of Orleans) and order the payment monthly to such legal aid bureau or legal aid association of the proceeds in the special fund herein provided for to assist in paying the costs of its operation. The adoption of such rule shall in no way affect the court's right to appoint counsel to indigent defendants in specific cases and to provide for the payment of his approved fees and expenses out of such fund. The court may re-examine such rule from time to time and revoke or amend it in its discretion.
J. This Section shall in no way repeal or supersede the provisions of R.S. 15:868. All other laws or parts of laws in conflict herewith are hereby repealed. Acts 1966, No. 366, §§ 1-10.